IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

CORNELL BOOSE,[1]

               Plaintiff,             Civil Action No.
                                         9:14-CV-0518 (MAD/DEP)

    v.

CLAUDE SCHNEIDER,[2]

               Defendant.

─────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

Cornell Boose, *Pro Se*
12-A-3355
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN      JOHN F. MOORE, ESQ.
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

─────────────────────

[1]     In the caption of his complaint, as well as the portion listing the parties to the action, plaintiff identifies himself as Boose Cornell. Dkt. No. 1 at 1. The signature on plaintiff's complaint, however, as well as plaintiff's papers in opposition to defendants' pending motion, reflect that his name is Cornell Boose. *Id.* at 6; Dkt. No. 27 at 1, 5.

[2]     The defendant was sued as C. Schenider. Dkt. No. 1 at 1. The clerk of the court is respectfully directed to adjust the court's records to reflect that the correct spelling of this individual's last name is "Schneider." Dkt. No. 24-6 at 1.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

This is an action originally brought by *pro se* plaintiff Cornell Boose against three individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to 42 U.S.C. § 1983, alleging the deprivation of his civil rights. While plaintiff's complaint originally included additional claims and named two other defendants, the only remaining cause of action is a procedural due process claim asserted against Claude Schneider, a Plant Superintendent employed by the DOCCS and stationed at the Clinton Correctional Facility ("Clinton"), where plaintiff was confined at the relevant times.

Currently pending before the court is a motion brought by defendant Schneider seeking the entry of summary judgment dismissing plaintiff's remaining claim. In support of that motion, defendant argues that the record now before the court does not support a reasonable factfinder's conclusion that plaintiff's procedural due process rights were violated during the underlying disciplinary hearing, and that, in any event, he is entitled to qualified immunity from suit. For the reasons set forth below, I recommend that defendant's motion be granted.

2

I.      BACKGROUND[3]

Plaintiff is a prison inmate currently in the custody of the DOCCS. *See generally* Dkt. No. 1. Although he is now incarcerated elsewhere, at the times relevant to this action, plaintiff was confined in Clinton, located in Dannemora, New York. *Id.*; Dkt. No. 28.

On February 4 or 5, 2013, plaintiff was issued a misbehavior report authored by Corrections Sergeant M. Giambruno alleging that plaintiff set a fire in the cube of a fellow inmate, identified as "Vandiver,"[4] in the early morning hours of February 4, 2013. Dkt. No. 1 at 4; Dkt. No. 24-3 at 46. According to Corrections Sergeant Giambruno, he believed plaintiff set the fire based on statements given to him by confidential informants during his investigation into the matter. Dkt. No. 1 at 4; Dkt. No. 24-3 at 46; Dkt. No. 24-4 at 47. The misbehavior report charged plaintiff with assault and arson. Dkt. No. 23-4 at 46; Dkt. No. 24-4 at 36.

A disciplinary hearing was convened by defendant Schneider in connection with the misbehavior report beginning on February 11, 2013.

---

[3]     In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[4]     This individual is variously referred to in the record evidence as "Vandiver," Dkt. No. 24-3 at 46, "Van Deviver," *id.* at 58, "Vanderburgh," *id.* at 65, and "Van de Viver," *id.* at 67; *see also* Dkt. No. 24-5 at 32. For the sake of consistency, I have referred to this individual as "inmate Vandiver" in this report.

[Dkt. No. 24-4 at 35](). At the outset of the hearing, defendant Schneider confirmed that plaintiff received the misbehavior report, and that plaintiff met with his inmate assistant prior to the hearing. *Id.* at 27, 36. Defendant then read the misbehavior report into the disciplinary hearing record, and plaintiff entered not-guilty pleas to both of the charges. *Id.* at 36. Before taking plaintiff's statement, defendant Schneider acknowledged plaintiff's requests for additional documents generated in connection with the investigation of the arson, including "the Unusual Incident Reports, To/From Reports, . . . Medical Reports . . ., [and] the Confidential Informant Reports." *Id.* at 37. While defendant Schneider explained to plaintiff that he would not be permitted access to either the confidential informant reports "because the names [of the informants] are listed on there" or the medical reports of inmate Vandiver because of the Health Insurance Portability and Accountability Act ("HIPAA"), he did provide plaintiff with a redacted copy of the unusual incident report and allowed plaintiff to question Corrections Sergeant Giambruno at the hearing. *Id.* at 38, 42-53.

During the hearing, plaintiff testified in his own defense, denying the allegations that he set the fire to inmate Vandiver's bed, and insisting that he had no motive to assault or otherwise harass the victim. [Dkt. No. 24-4]()

at 39. In addition, while defendant Schneider received testimony from inmate Vandiver outside the presence of plaintiff, plaintiff was permitted to read Vandiver's statement, which indicated that he did not know who set the fire. *Id.* at 33.

Three inmates testified on plaintiff's behalf at the hearing, generally serving as character witnesses for him and testifying that they had no reason to believe that plaintiff would have set the fire. Dkt. No. 24-4 at 53-58. Defendant Schneider denied plaintiff's request to have the corrections officer who was on duty in the area on the night of the fire, Corrections Officer Herbst, testify because he believed the testimony Herbst would have to offer was not relevant or necessary. *Id.* at 59-61; *see also* Dkt. No. 24-6 at 5. He also declined to permit plaintiff to call inmate Vandiver as a witness because he allowed plaintiff to read inmate Vandiver's statement reflecting that inmate Vandiver did not accuse plaintiff of setting the fire. Dkt. No. 24-4 at 58; Dkt. No. 24-6 at 5.

Following the conclusion of the disciplinary hearing, defendant Schneider found plaintiff guilty of the two charges contained in the misbehavior report, issued a written decision, and imposed sanctions that included twelve months of confinement in the facility's special housing unit ("SHU"), with a corresponding loss of privileges and recommended loss of

good-time credits, and a requirement that plaintiff make restitution in the amount of $87.15. Dkt. No. 24-4 at 30-31, 63. Plaintiff's subsequent appeals of defendant Schneider's decision were denied by the Clinton Superintendent and the DOCCS Director of the Special Housing/Inmate Disciplinary Program. Dkt. No. 24-3 at 63, 108.

Plaintiff filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("Article 78") in Albany Supreme Court challenging defendant's disciplinary hearing determination. *Id.* at 6-14. On April 17, 2014, following a transfer of the matter to the New York State Supreme Court, Appellate Division, Third Department, *id.* at 19, 34-35, the Appellate Division issued a memorandum and judgment annulling defendant Schneider's decision based on its finding that there was "a lack of substantial evidence to support the determination." *Id.* at 37-38. As a rationale for its decision, the Appellate Division specifically stated the following:

> Hearsay evidence in the form of confidential information may constitute substantial evidence to support a determination of guilt if it is sufficiently detailed to allow the Hearing Officer to independently assess its reliability and credibility. Here, the misbehavior report alleged that the authoring correction sergeant received information from several sources identifying petitioner as the culprit. However, the record contains no details of the confidential information allegedly implicating

> petitioner, and the confidential testimony relied upon
> by the Hearing Officer does not identify petitioner as
> the individual who started the fire. Significantly, the
> author of the misbehavior report did not testify as to
> what confidential information he was provided. In
> view of the absence of this information from the
> record, the Hearing Officer was unable to
> independently assess the reliability and credibility of
> the confidential information, as he was required to
> do.

*Id.* at 38 (citations omitted). As a result of the Appellate Division's decision,

defendant Schneider's decision was reversed and expunged from

plaintiff's disciplinary record, and plaintiff's twelve months of good-time

credit was restored. Dkt. No. 24-3 at 6; Dkt. No. 24-5 at 25. According to

the plaintiff, he remained in SHU confinement as a result of the

defendant's determination for a little less than one full year. Dkt. No. 24-5

at 55.

Plaintiff contends that, during the disciplinary hearing, defendant

Schneider (1) was biased, Dkt. No. 1 at 4; (2) should have permitted him

to call inmate Vandiver and Corrections Officer Herbst as witnesses at the

hearing, Dkt. No. 24-5 at 32-33, Dkt. No. 27 at 9; and (3) improperly

withheld evidence generated during the investigation of the underlying

arson from plaintiff during the hearing, *id.*

## II.  PROCEDURAL HISTORY

Plaintiff commenced this action on May 5, 2014, by the filing of a complaint and an accompanying application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 5. Plaintiff's complaint named Hearing Officer Schneider, Corrections Sergeant Giambruno, and a "John Doe" identified as the superintendent at Clinton as defendants. *Id.*

On November 3, 2014, District Judge Mae A. D'Agostino issued a decision and order, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, granting plaintiff's IFP application and dismissing all of the claims asserted against the named defendants, with the exception of plaintiff's due process cause of action against defendant Schneider. Dkt. No. 11.

Following the close of discovery, defendant Schneider filed the currently pending motion for summary judgment on August 24, 2015. Dkt. No. 24. Plaintiff has since responded in opposition to the motion, and defendant has filed a reply memorandum. Dkt. Nos. 27, 29. The motion is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial

burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.     Plaintiff's Procedural Due Process Claim

Plaintiff asserts a Fourteenth Amendment procedural due process claim against defendant Schneider based on allegations that Schneider was a biased hearing officer, failed to permit him access to certain documents generated during the investigation of the underlying arson, and improperly rejected his requests to call certain witnesses at his disciplinary hearing. Dkt. No. 1 at 4; Dkt. No. 24-5 at 24, 33, 48, 53-54.

As a general matter, to prevail on a section 1983 due process claim arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

>    1.    Liberty Interest

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 79-80; *Hynes*, 143 F.3d at 658. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See*, *e.g.*, *LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, at *6

(N.D.N.Y. Feb. 6, 2001) (Kahn, J.). Accordingly, I must next examine whether the allegations related to the conditions of plaintiff's SHU confinement rise to the level of an atypical and significant hardship under *Sandin*.

Atypicality in a *Sandin* inquiry is normally a question of law.[5] *Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). "[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (citing *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997)). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a court may not need to undergo a detailed analysis of these considerations. *Arce*, 139 F.3d at 336; *Hynes*, 143 F.3d at 658.

As to the duration of the disciplinary segregation, restrictive confinement of less than 101 days, on its own, does not generally rise to the level of an atypical and significant hardship. *Davis*, 576 F.3d at 133.

---

[5] In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

Accordingly, when the duration of restrictive confinement is less than 101 days, proof of "conditions more onerous than usual" is required. *Davis*, 576 F.3d at 133 (citing *Colon*, 215 F.3d at 232-33 n.5). The court must examine "the [actual] conditions of [the plaintiff's] confinement 'in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'" *Davis*, 576 F.3d at 134 (quoting *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir.1999)). On the other hand, the Second Circuit has found that disciplinary segregation under ordinary conditions of more than 305 days rises to the level of atypicality. *See Colon*, 215 F.3d at 231 ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin.*").

In this instance, plaintiff alleges that, as a result of defendant Schneider's decision following the disciplinary hearing, he was held in disciplinary confinement for nearly one full year. Dkt. No. 24-5 at 55. Defendants do not dispute this fact. Because the Second Circuit has held that SHU confinement for 305 days is sufficient to satisfy this element of a procedural due process claim, and defendant appears to have conceded

this point for purposes of the instant motion, [Dkt. No. 24-8 at 5](), I recommend a finding that plaintiff has satisfied this element and will turn to whether the record contains a genuine dispute of material fact with respect to the safeguards provided to him during his disciplinary hearing. *Colon*, 215 F.3d at 231.

## 2. Procedural Safeguards

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established under *Wolff v. McDonnell*, 418 U.S. 539 (1974). In its decision in *Wolff*, the Court held that the constitutionally mandated due process requirements include (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-69; *see also Luna v. Pico,* 356 F.3d 481, 487 (2d Cir. 2004). To pass muster under the Fourteenth Amendment, it is also required that a hearing officer's disciplinary determination garners the support of at least

"some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472

U.S. 445, 455 (1985); *Luna*, 356 F.3d at 487-88.

Here, plaintiff contends that his due process rights were violated

because defendant Schneider (1) was biased, (2) failed to permit him to

examine certain documents generated in connection with the investigation

of the arson, and (3) denied his requests to call two witnesses at the

hearing. I will address each contention separately below.

i. Bias

The due process clause of the Fourteenth Amendment guarantees

that "[a]n inmate subject to a disciplinary hearing is entitled to. . . an

impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.

1996) (citing *Wolff*, 418 U.S. at 570-71). The Second Circuit has explained

that its "conception of an impartial decisionmaker is one who, *inter alia*,

does not prejudge the evidence and who cannot say . . . how he would

assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d

564, 570 (2d Cir. 1990). "The degree of impartiality required of prison

officials[, however,] does not rise to the level of that required of judges."

*Allen*, 100 F.3d at 259. Indeed, "[i]t is well recognized that prison

disciplinary hearing officers are not held to the same standard of neutrality

as adjudicators in other contexts." *Russell v. Selsky*, 35 F.3d 55, 60 (2d

Cir. 1996). "A hearing officer may satisfy the standard of impartiality if there is 'some evidence in the record' to support the findings of the hearing." *Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5 (W.D.N.Y. Oct. 5, 2010) (quoting *Hill*, 472 U.S. at 455); *see also Francis v. Coughlin*, 891 F.2d 43, 45 (2d Cir. 1989) (responding to the plaintiff's allegations that the hearing officer's bias allowed for "*no* chance to prevail at the [disciplinary] hearing]" by concluding that "it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates [an inmate's] right [to be free from arbitrary governmental action]" (emphasis in original)).

Here, there is no record evidence from which a reasonable factfinder could conclude that defendant Schneider was biased against plaintiff or that he predetermined the outcome of the disciplinary hearing. As the hearing transcript reflects, defendant Schneider heard testimony from plaintiff, Corrections Sergeant Giambruno, and three inmates requested by plaintiff. *See* Dkt. No. 24-4 at 35-64. In addition, defendant allowed plaintiff to ask Corrections Sergeant Giambruno several questions and asked a question of his own that was aimed at determining the credibility of the confidential informants on whose information Giambruno relied in accusing plaintiff of the underlying assault and arson. *Id.* at 46-53. Although

defendant Schneider did not permit plaintiff access to certain documents or allow him to call certain witnesses, there is no record evidence to suggest that he did so out of bias towards plaintiff. Instead, defendant Schneider explained why plaintiff could not be permitted to view inmate Vandiver's medical records or the confidential informants' statements, *id.* at 42-43, and his justification for not calling Corrections Officer Herbst or inmate Vandiver as witnesses at the hearing, *id.* at 58-60. In addition, defendant Schneider relied on the testimony of Corrections Sergeant Giambruno and the statements of the confidential informants when rendering his decision. *Id.* at 31, 63.

Plaintiff's bare assertions with respect to defendant Schneider's bias are unsupported by the record and, accordingly, are insufficient to give rise to a dispute of material fact. *See Francis*, 891 F.2d at 47 ("[A] plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment[.]").

ii.     Access to Investigatory Documents

Plaintiff complains that his due process rights were violated when defendant Schneider denied him permission to view the unredacted unusual incident report generated following the arson, the victim's medical

17

records, and the statements rendered by the confidential informants. [Dkt. No. 27 at 9](). While the Second Circuit has "held that, at a minimum, a prisoner is entitled to be confronted with the accusation, informed of the evidence against him . . . and afforded a reasonable opportunity to explain his actions," this right can give way to legitimate concerns over institutional safety. *Francis*, 891 F.2d at 47-48 (quotation marks omitted). In this instance, the unredacted unusual incident report and the confidential informants' statements were withheld from plaintiff at the disciplinary hearing in light of legitimate institutional security concerns. In particular, defendant Schneider explained to plaintiff that the redacted portions of the unusual incident report contained either medical information to which plaintiff was not privy based on HIPAA restrictions or confidential information that could expose the identity of the confidential informants to plaintiff. [Dkt. No. 24-4 at 33](), 37, 42-45. Defendant Schneider further explained to plaintiff that he was not permitted to view inmate Vandiver's medical records based on HIPAA's restrictions on disclosing medical information. *Id.* at 42. Notwithstanding these restrictions on defendant Schneider's ability to disclose to plaintiff the requested materials, he permitted plaintiff to supplement his access to the redacted unusual incident report and other available documentary evidence by questioning

Corrections Sergeant Giambruno, who undertook the investigation regarding the arson. *Id.* at 45. Because I find that defendant Schneider's decisions to deny plaintiff access to the unredacted unusual incident report, confidential informants' statements, and inmate Vandiver's medical records were adequately justified by either institutional safety concerns or federal law, I recommend a finding that plaintiff was not denied procedural due process in this regard. *Compare Loret v. Selsky*, 595 F. Supp. 231, 234 (W.D.N.Y. 2009) (denying the entry of summary judgment where the defendant-hearing officer denied the plaintiff's request for a copy of a telephone conversation because the hearing officer conclusorily stated that providing the copy would "'jeopardize[] . . . institutional goals and safety'").

### iii.    Denial of Witnesses

Lastly, plaintiff contends that defendant Schneider's denial of his request to call inmate Vandiver and Corrections Officer Herbst as witnesses at the disciplinary hearing violated his due process rights. Dkt. No. 27 at 9. It is well-established that inmates do not have a constitutional right of confrontation in the context of a disciplinary hearing. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). Accordingly, a hearing officer is permitted to take the testimony of a witness outside the presence of an

inmate. *Francis*, 891 F.2d at 48. In addition, "[d]isciplinary hearing officers . . . have the discretion to deny witnesses for valid reasons, including irrelevance, lack of necessity, and other factors particular to each case." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 377 (N.D.N.Y. 2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) (citing *Wolff*, 418 U.S. at 566-67).

  In this instance, plaintiff sought inmate Vandiver's testimony to verify that he did not accuse plaintiff of setting the fire. Dkt. No. 24-4 at 44, 58. Defendant Schneider, however, declined to call that individual as a witness because plaintiff was provided an opportunity to review inmate Vandiver's statement, which indicated that he did not know who set his bed on fire. *Id.* at 33, 58. Thus, defendant Schneider determined that inmate Vandiver's testimony was unnecessary. *Id.* at 58; *see also* Dkt. No. 24-5 at 53-54.

Turning to Corrections Officer Herbst, plaintiff sought his testimony in order to ask him whether he witnessed the fire and to have him serve as an additional character witness. Dkt. No. 24-4 at 59; Dkt. No. 24-5 at 53-54. In denying plaintiff's request to call Corrections Officer Herbst, defendant Schneider explained that he found Correction Sergeant Giambruno's testimony enlightening with respect to whether Corrections

Officer Herbst witnessed the incident and did not need his testimony regarding plaintiff's character because three other witnesses testified as to plaintiff's character. *Id.* at 59-60. In concluding that the testimony of Corrections Officer Herbst would be irrelevant and inmate Vandiver's testimony was not necessary, defendant Schneider acted well within his discretion. *See, e.g., Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) ("[A] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony.").

In sum, for all the reasons discussed above, I recommend a finding that plaintiff's allegations regarding the violation of his due process rights are unfounded, and that no reasonable factfinder could conclude plaintiff was deprived of due process by defendant Schneider during the course of his disciplinary hearing. Accordingly, defendant's motion for summary judgment should be granted.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff contends that he was deprived of procedural due process with respect to a disciplinary hearing that occurred at Clinton in February 2013. The record before the court, however, does not disclose any dispute of material fact regarding the issues raised in plaintiff's remaining claim. Based upon that record, no reasonable factfinder could conclude that

defendant Schneider (1) was biased, (2) improperly refused to provide certain documentary evidence to plaintiff, or (3) improperly denied plaintiff's request to call two witnesses. Accordingly, it is hereby respectfully

RECOMMENDED that defendant Schneider's motion for summary judgment (Dkt. No. 24) be GRANTED and that plaintiff's complaint (Dkt. No. 1) be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    February 19, 2016
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge